## CITY OF FORT WORTH v. BOBBITT, Atty. Gen.

### No. 1455—5690.

Commission of Appeals of Texas, Section A.
March 4, 1931.

R. E. Rouer, City Atty., and George C. Kemble, both of Fort Worth, and John D. McCall, of Dallas, for relator.

James V. Allred, Atty. Gen., and Scott C. Gaines, Asst. Atty. Gen., for respondent.

CRITZ, J.

This is an original mandamus proceeding filed by the city of Fort Worth, Tex., a city duly and legally incorporated under and by virtue of the laws of the state of Texas, and operating as a home-rule city, with a population of more than 15,000 inhabitants, and by certain officers of said city against the Attorney General of this state to compel the approval of certain "special improvement bonds or certificates" issued by the city of Fort Worth under the provisions of chapter 43, p. 82, General Laws 4th Called Session 41st Legislature, 1930 (Vernon's Ann. Civ. St. art. 835b).

The Attorney General has declined to approve such bonds, and contends that the act attempting to authorize the issuance of same is unconstitutional and void for several reasons. We deem it only necessary to discuss one of such reasons.

 The Attorney General contends that the act in question is in contravention of section 56 of article 3 of our state Constitution in that same seeks to regulate the affairs of a city and seeks to change the charter of an incorporated city by a local law.

The caption of the act in question reads as follows: "An Act providing that certain cities having the population requirements set forth herein may acquire and own special assessment certificates issued in connection with street improvements, that such cities may pledge and impound said certificates as the basis for the issuance of special improvement bonds subject to the limitations and provisions of this Act; providing for use of funds from the sale of such bonds; providing that such bonds shall not be reckoned in determining charter, Constitutional or Statutory bond limitations and shall not constitute indebtedness of the city contemplated under certain provisions of the Constitution; prescribing Statutory duties imposed on such cities when such bonds are issued; providing for the examination and approval of such bonds by the Attorney General, and for their registration by the Comptroller; and declaring an emergency."

Section 1 of the act (Vernon's Ann. Civ. St. art. 835b, § 1) in question reads as follows: "Section 1. Cities in the State of Texas having not less than 106,000 inhabitants and not more than 110,000 inhabitants, according to the United States Census of 1920, may proceed in accordance with the provisions hereof, independently of and without reference to any other applicable law or charter provision, present or future, which, however, shall remain in force as altenative (alternative) methods. The terms 'city', 'such city', 'said city', and the plurals thereof, shall mean a city or cities included under the provisions of this Act."

Section 56 of article 3 of our state Constitution, so far as applicable to this case, reads as follows:

"Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing: * * *

"Regulating the affairs of counties, cities, towns, wards or school districts. * * *

"Incorporating cities, towns or villages, or changing their charters."

It will be noted that section 1 of the act confines its application absolutely to cities which, according to the United States census of 1920, contain not less than 106,000 and not more than 110,000 inhabitants. An examination of the census referred to discloses that the city of Fort Worth, Tex., is absolutely the only city in the state of Texas that has a population coming within the provisions of this act. Furthermore, the act is so constructed that it is absolutely impossible for any other city in the state to ever be included within the terms or under the provisions of the act. It is therefore our opinion that this act is confined in its application to the city of Fort Worth only, just as clearly, and just as effectively as if the stipulation with reference to population had been omitted and the name "Fort Worth" written therein in its

stead. The Constitution in plain and simple terms prohibits the enactment of any local or special law regulating the affairs of cities, or changing their charters. It cannot be denied that this law does have reference to regulating the affairs of cities. If it is a local or special law, it is therefore unconstitutional and void.

We presume that no one would contend, if the name "Fort Worth" had been inserted in the law in place of the stipulation with reference to population, that the act would be constitutional. If we should hold this law to be constitutional when it describes and confines its application absolutely to one city, we would in effect be holding the constitutional provision under discussion an idle and a vain thing, and can be evaded by a subterfuge. We therefore hold that the act in question is unconstitutional and void. Lewis' Sutherland Stat. Construction (2d Ed.) p. 397 et seq. and notes. Parker-Washington Co. v. Kansas City, 73 Kan. 722, 85 P. 781, 782; Hibbard v. State, 65 Ohio St. 574, 64 N. E. 109, 112, 58 L. R. A. 654; Gray v. Taylor, 227 U. S. 51, 33 S. Ct. 199, 201, 57 L. Ed. 413; 36 C. J. 96.

We quote the following from Sutherland, supra.

"A classification based upon existing or past conditions or facts and which would exclude the persons, places, things or objects thereafter coming into the same situation or condition, is special and void. Thus a classification of cities or counties based upon existing population or upon the population shown by specified census is of this character."

"The number of persons affected by a law does not control or determine the question of its validity; it is enough that the law relates to a subject of a general nature, and is general and uniform in its operation upon every person who is brought within the relation and circumstances provided for by it. A class of cities or counties, based upon population, may be valid, though it embraces but one city or county, if others may come into the class on attaining the specified population."

"An act which designates a particular city or county by name, or by a description so qualified that a particular city or county is plainly intended; and that no other can reasonably be expected to have the distinguishing characteristics, and whose operation is limited to such city or county, is held to be local or special."

"An act applicable to counties having a population of from 35,190 to 35,200 was held evasive and special"—citing Hixson v. Burson, 54 Ohio St. 470, 43 N. E. 1000; Owen County Com'rs v. Spangler, 159 Ind. 575, 65 N. E. 743.

In Parker-Washington Co. v. Kansas City, supra, the Supreme Court of Kansas, in construing the provisions of the Constitution of that state and in defining a "special act" and "laws of a general nature," said: "Section 1 of article 12 of the Constitution provides that 'the Legislature shall pass no special act conferring corporate powers,' and section 17 of article 2 that 'all laws of a general nature shall have a uniform operation throughout the state.' Whether the act in question is to be regarded as special, and whether its operation is uniform throughout the state depend upon whether population affords a fair basis for the classification of cities with reference to the matters to which it relates, and whether the result it accomplishes, is in fact a real classification upon that basis, and not a designation of a single city to which alone it shall apply, under the guise of such classification."

In Hibbard v. State, supra, a law of Ohio which provided for pensioning teachers in the public schools of a certain city in that state was attacked on the ground that it violated a provision of the Constitution of Ohio providing that all laws of a general nature should have a uniform application throughout the state. The law in question was so drawn that it was general in form, but only applied at the time it went into effect to the city of Toledo, and could never after a certain date apply to any other city. The court condemned the law in the following language: "'It is argued that this might apply to any city that came into the class at any time thereafter; that the language of the act might be so construed as to include such cities; and that the boards in such cities and the teachers might take action after they came into the class designated. But we do not so construe this act. It is contrary to the plain language of the act itself, which provides that such action shall be taken within a certain time after the act goes into effect. The language of the act itself and its title seem to indicate that it was intended by the legislature that it should apply only to the city of Toledo. This act not only did not apply to any city in the state but Toledo at the time of its passage and taking effect, but it could never apply in the future to any other city. The subject-matter of the act is one of a general nature, and in which all the people of the state are interested. It comes within both the language and the spirit of this provision of the constitution.'"

In Gray v. Taylor, supra, the Supreme Court of the United States defined a local law as: "The phrase 'local law' means, primarily, at least, a law that in fact, if not in form, is directed only to a specific spot." 36 C. J. 690, supra, gives practically the same definition.

Of course we do not mean to hold that an act general in its nature and terms would be in contravention of the above constitutional provisions, merely because at the time of

its passage it only affects one city; in fact we hold to the contrary. We think, however, that an act which is so drawn that by its plain and explicit provisions it is made to apply to one city only in the state, and can never in any contingency apply to any other city, is just as repugnant to the constitutional provisions under discussion as though the name of the city to which the act does apply had been written into the act in the first instance. In other words, we think that a city can be designated by description just as effectively as it can be named.

To state our views in another form, we hold that a law that has uniform application throughout the state to cities of a certain class, as to population, or other legitimate classification, is not repugnant to the constitutional provision under discussion, even though there is only one city in the state of that class, but when the law is so drawn that it applies only to one city, and can never apply to any but this one city in any possible event, the law is unconstitutional and void, because such a law is not based on classification but on isolation. Cooley's Constitutional Limitations (8th Ed.) Notes, vol. 1, page 262, 263.

Since the act is unconstitutional for the reasons stated, there is no lawful authority for the issuance of the bonds which the city of Fort Worth here seeks to have the Attorney General approve.

The mandamus should therefore be refused, and we so recommend.

CURETON, C. J.

The opinion of the Commission of Appeals is adopted, and mandamus refused.